UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| BRYAN PRINCE, | ) |
| Plaintiff, | ) Civil No. 15-52-ART-EBA |
| v. | ) |
| APPALACHIAN REGIONAL HEALTHCARE, INC., | ) **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

A collective-bargaining agreement does not have the Midas touch, transforming every state-law claim in the vicinity into a federal case. Here, Bryan Price sued his employer, Appalachian Regional Healthcare, advancing two state-law claims: a civil-rights violation and breach of contract. Appalachian then removed the case to this Court, arguing that Prince's breach-of-contract claim was *really* a federal-law claim arising under § 301 of the Labor Management Relations Act. But although Prince was indeed subject to a collective-bargaining agreement—and thus *could have* sued for breach of contract under federal law—he chose not to do so. Instead, he alleged only that Appalachian had breached the terms of an implied contract that arose under the common law of Kentucky. Thus, Prince's breach-of-contract claim neither asserts a right under the bargaining agreement nor requires the Court to interpret its terms. As shown below, that means his claim does not "arise under" federal law. The Court must therefore grant Prince's motion to remand.

I.

From May 2013 until June 2014, Prince worked as a plant operational engineer at Appalachian's regional medical center in South Williamson, Kentucky. During that time, Prince was a member of the United Steelworkers Union, which had a collective-bargaining agreement with Appalachian. *See* R. 9-7 (Collective-bargaining agreement). Appalachian eventually fired him from his job there. *See* R. 4 at 2.

In May 2015, Prince sued Appalachian in Kentucky state court. *See* R. 1-2. In his complaint, Prince advanced two theories of liability: that Appalachian had violated the Kentucky Civil Rights Act and that Appalachian had breached its contract with him. The complaint made no reference to federal law. *See id.*

In June, Appalachian removed the case to this Court. *See* R. 1. In its notice of removal, Appalachian argued that Prince's breach-of-contract claim "requires the interpretation of a collective bargaining agreement between [Appalachian] and [Prince's] union representative." R. 1 at 1. As Appalachian points out, "[c]laims requiring the interpretation of a collective bargaining agreement" are "completely preempted by Section 301 of the Labor Management Relations Act." *Id.* at 3 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)). Thus, Appalachian argues, Prince's suit is "subject to removal under 29 U.S.C. § 185(c) and 28 U.S.C. § 1331." *Id.* (citing *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1326 (6th Cir. 1989) (en banc); *In re General Motors Corp.*, 3 F.3d 980, 983 (6th Cir. 1993)).[1] Prince now moves to remand. R. 9.

---

[1] Appalachian concedes that Prince's civil-rights claim arises under state law, not federal, and thus asks the Court to exercise its supplemental jurisdiction over that claim.

II.

A defendant may remove a case filed in state court if the case arises "under the Constitution, treaties, or laws of the United States." 28 U.S.C. § 1441(b). In most cases, federal courts determine whether a case "arises under" federal law by using the "well-pleaded complaint rule." *See generally Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 6 (1987). Under that rule, a court has federal-question jurisdiction only if "a federal question is presented on the face of [a] plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392. There is no question that, under the well-pleaded complaint rule, there would be no federal-question jurisdiction here. For Prince's complaint contains only two claims, both of which appear to arise exclusively under state law, not federal.

Most rules have exceptions, however, and this one is no different. The well-pleaded complaint rule does not apply in cases of "complete preemption." If a state-law claim is completely preempted by federal law, then even an "ordinary state common-law complaint" is converted "into one stating a federal claim." *Id.* at 393 (quoting *Metro. Life*, 481 U.S. at 65). Thus, if a defendant can show that federal law "completely preempts" any of the plaintiff's state-law claims, then a court will have federal-question jurisdiction over the claim.

Here, Appalachian argues that § 301 of the Labor Management Relations Act has "completely preempted" Prince's breach-of-contract claim. Section 301 preempts a state-law breach-of-contract claim in two situations: if the claim asserts a right created by a collective-bargaining agreement, or if the claim requires the court to interpret the terms of such an agreement. *See Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004). The "bare fact" that "a court must consult the [collective-bargaining agreement] for information helpful to

3

resolving the claim is not enough to result in preemption." *Howard v. Cumberland River Coal Co.*, 838 F. Supp. 2d 577, 583 (E.D. Ky. 2011). Instead, the "meaning of the [agreement's] terms must be at dispute." *Id.* (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)). Thus, § 301 "completely preempts" a state-law claim—for removal purposes, anyway—only if "proof of the plaintiff's prima facie case requires interpreting the [collective-bargaining agreement]." *Id.* at 582. If not, then § 301 does not preempt the claim. *Id.*; *see also Alongi v. Ford Motor Co.*, 386 F.3d 716, 727 (6th Cir. 2004) (rejecting, on appeal of a remand order, consideration of a defense that the defendants were "certain to raise"); *Mattis*, 355 F.3d at 906–07 (analyzing, on appeal of a remand order, only the elements of the plaintiff's prima facie case).

Here, Prince's breach-of-contract theory runs as follows. He alleges that, at the time he was fired, Appalachian had in place "policies and procedures governing its expectations of employees." R. 1-2 at 6. Those policies and procedures, Prince says, created a contract "between [Appalachian] and employees like [Prince]." *Id.* Under the terms of that contract, Prince says, Appalachian could not fire an employee who abided by its policies and procedures. And Prince says he did just that. *Id.* Thus, he concludes, Appalachian "breached its contract with [him]" when it fired him. *Id.*

To summarize, Prince's breach-of-contract claim is really a breach-of-*implied*-contract claim. In Prince's view, "personnel policies may become binding contracts" under Kentucky common law "when the employee continues to work while the policy remains in effect" because "the policy is deemed an implied contract for so long as it remains in effect." R. 9-1 at 3 (citing *Parts Depot, Inc. v. Beiswenger*, 170 S.W.2d 354, 363 (Ky. 2005)). Thus, Prince says, when Appalachian issued its policies and procedures, the company thereby

4

created an implied contract under the common law of Kentucky. *See id.* That implied contract—rather than, say, a collective-bargaining agreement—is the contract Prince says that Appalachian breached.

It is not clear that Prince's claim is a winner under Kentucky law. What is clear, however, is that his claim does not assert any rights "created" by the collective-bargaining agreement. After all, Prince says that his contract rights come from the common law, not from any paper document. Equally clear is that his claim does not require the Court to interpret the terms of the bargaining agreement. For Prince argues only that Appalachian breached its implied contract, not that Appalachian breached its collective-bargaining agreement. When evaluating that argument, a court will certainly need to interpret the common law of Kentucky. But it will have no need—at least when evaluating Prince's prima facie case—to interpret the collective-bargaining agreement. *See Howard*, 838 F. Supp. 2d at 582 (citing *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1333 (6th Cir. 1989)) ("If [Labor Management Relations Act] preemption arises as a basis for removal, the Court's inquiry is limited to whether the proof of the plaintiff's prima facie case requires interpreting the [collective-bargaining agreement]."). Thus, the state-law claim does not require interpretation of the collective-bargaining agreement, nor is that claim based on rights created by such an agreement. Thus, § 301 of the Labor Management Relations Act does not "completely preempt" Prince's state-law claim. *See Mattis*, 355 F.3d at 906.

A case from the Supreme Court of the United States—*Caterpillar v. Williams*—confirms this result. *See Caterpillar*, 482 U.S. at 386. There, the plaintiffs were union members who were subject to a collective-bargaining agreement with Caterpillar, their employer. They alleged that Caterpillar made "oral and written representations that they

5

could look forward to indefinite and lasting employment with the corporation." *Id.* at 388 (internal quotations omitted). Specifically, the plaintiffs alleged that Caterpillar told them that, if their plant was ever closed, "Caterpillar would provide employment opportunities for [them] at other [Caterpillar] facilities." *Id.* at 389. After Caterpillar closed the plant and failed to transfer them, the plaintiffs "filed an action based solely on state law in California state court, contending that Caterpillar [had] breached [its oral] agreement." *Id.* at 390 (internal quotations omitted). Caterpillar then removed the action to federal court, arguing that "removal was proper because the individual employment contracts made with respondents were, as a matter of federal substantive labor law, merged into and superseded by [the] collective bargaining agreements." *Id.* (internal quotations omitted)

The Supreme Court rejected that argument and held that Caterpillar's removal was improper. As the Court noted, the plaintiffs "possessed substantial rights under the collective agreement and could have brought suit under § 301 [but] as masters of the complaint . . . they chose not to do so." *Id*. at 395. Instead, the Court pointed out, the plaintiffs alleged that Caterpillar had "entered into and breached *individual* employment contracts with them." *Id.* at 394 (emphasis in original). "Section 301," the Court went on to say, "says nothing about the content or validity of individual employment contracts," and "it would be inconsistent with congressional intent under [§ 301] to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 394–95 (internal quotations omitted). Caterpillar's "basic error," the Court held, was its "failure to recognize that a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the

contract relied upon is *not* a collective-bargaining agreement." *Id.* at 396 (emphasis in original).

Appalachian makes the same "basic error" here. Although Prince was covered by a collective-bargaining agreement—and thus could have "brought suit under § 301"—he "chose not to." *Id.* at 395. And although Prince was indeed a member of the union, he nevertheless "is permitted to assert legal rights *independent* of [the collective-bargaining] agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement." *Id* at 396. The contract Prince relies on here is an implied contract under the common law of Kentucky, rather than a collective-bargaining agreement. And thus this Court reaches the same result here that the Supreme Court reached in *Caterpillar*: Prince's claims "do not arise under federal law and therefore may not be removed to federal court." *Id.* at 399.

Appalachian responds in a few ways. First, it notes that, "[a]s a member of the bargaining unit of [the union], [Prince's] employment could only be terminated in accordance with the terms and conditions of the [collective-bargaining agreement] between the parties." R. 11 at 2. As Appalachian points out, the [collective-bargaining agreement] provides that union employees may be terminated only with "just cause," "grants [Appalachian] exclusive rights of hiring, discharging, and directing the work force, and establishing reasonable policies in connection therewith," and forbids Appalachian from making any policy that "abridge[s] any terms, provisions, or conditions of the [agreement]." R. 11 at 3 (citing the collective-bargaining agreement). Thus, Appalachian argues, "the [collective-bargaining agreement] constitutes the only contract in existence between the parties with respect to the termination of [Prince's] employment." R. 11 at 3.

7

That argument misunderstands Prince's claim. Prince argues that Appalachian's conduct created an implied contract *notwithstanding* the collective-bargaining agreement. Thus, according to Prince, the collective-bargaining agreement was *not* the "only contract in existence between the parties with respect to the termination of [Prince's] employment." R. 11 at 3. And it was that *implied* contract—rather than the collective-bargaining agreement—that Prince says Appalachian breached when it fired him.

Second, Appalachian contends that "the [collective-bargaining agreement] is the sole basis for determining the grounds and conditions of the termination of Prince's employment with [Appalachian]." R. 11 at 3. Since Appalachian may not "abridge" the agreement's terms, the argument seems to go, a union member may sue for breach of contract *only* if he does so pursuant to the bargaining agreement. The problem with that argument is that the agreement nowhere claims to be the *only* agreement between Appalachian and members of union. The agreement does indeed provide that union members may not be fired without just cause. And that provision creates for union members a base-level of employment protection: if no "just cause," then no termination. What the agreement nowhere provides, however, is that the parties may not enter into *other* agreements that provide *more* than base-level protections for employees.[2]

Here, Prince argues that Appalachian created one such additional agreement with him. The terms of that agreement, Prince says, were that he would not be fired—notwithstanding whether there was "just cause" pursuant to the collective-bargaining agreement—so long as he complied with Appalachian's policies and procedures. The collective-bargaining agreement nowhere purports to forbid such supplemental agreements.

---

[2] At the very least, Appalachian has not pointed to any such language in the collective-bargaining agreement.

8

And thus Appalachian is mistaken when it says that the collective-bargaining agreement provides the *only* foundation on which to build a breach-of-contract claim.

Third, Appalachian argues that, "[w]hile a particular policy or policies of [Appalachian] might certainly be referred to as part of the disciplinary process, such reference would be in assessing whether 'just cause' exi[s]ts under the [collective-bargaining agreement] to terminate the employment of an employee." R. 11 at 3–4. The policies "do not authorize termination of a bargaining unit employee," Appalachian says, "only the [collective-bargaining agreement] provides this authority." R. 11 at 4. Thus, the argument seems to go, when Prince sued for breach of contract, he must have done so pursuant to the collective-bargaining agreement.

Again, this argument misunderstands Prince's claim. He does not argue that Appalachian's policies gave Appalachian some additional *power* to terminate employees. He argues instead that the policies placed additional *restrictions* on Appalachian's ability to do so, namely that Appalachian could not terminate an employee if he complied with its policies. This argument therefore provides no basis on which to conclude that § 301 preempts Prince's state-law claim.

Finally, Appalachian argues that Prince's "requested relief requires the interpretation of the collective-bargaining agreement." R. 11 at 6. In the prayer-for-relief section of Prince's complaint, he asks the Court to reinstate him "to his former position with [Appalachian] at the rate of pay he received at the time of his discharge." R. 1-2 at 7. Appalachian points out that the Sixth Circuit has held that, if a plaintiff requests reinstatement as the remedy for a breach-of-contract claim, then that request alone is "enough to support preemption." R. 11 at 6 (quoting *Klepsky v. United Parcel Serv., Inc.*,

9

489 F.3d 264, 270 (6th Cir. 2007)). The reason for this rule is that employment is typically at-will and courts will thus refrain in most cases from ordering specific performance—in the form of reinstatement—to enforce employment agreements. *See Klepsky*, 489 F.3d at 270. Thus, Appalachian says, the only way Prince would be entitled to reinstatement is if the collective-bargaining agreement says so. In Appalachian's view, therefore, the Court would need to interpret the terms of the collective-bargaining agreement when fashioning a remedy. For that reason, Appalachian concludes, § 301 preempts Prince's breach-of-contract claim.

That would be a good argument if Prince had included only a breach-of-contract claim in his complaint. But he also included a claim under the Kentucky Civil Rights Act. And under that law, a plaintiff is entitled to reinstatement as an injunctive remedy in certain situations. *See Brooks v. Lexington-Fayette Urban Cty. Hous. Auth.*, 132 S.W.3d 790, 806 (Ky. 2004). In Prince's complaint, he refers to reinstatement only twice: in his civil-rights count, and in his catch-all prayer for relief at the very end. *See* R. 1-2 at 5, 7. He does not ask for reinstatement at all in the breach-of-contract section of his complaint. *See id.* at 6.

Moreover, in Prince's prayer for relief, he makes clear that he wants *either* damages or, *in the alternative*, reinstatement. *Id.* at 7. The most natural reading of the complaint is that Prince seeks reinstatement only if he prevails on the civil-rights claim; otherwise, he seeks only damages. For that reason, *Klepsky*—the Sixth Circuit case on which Appalachian relies—is distinguishable. There, the plaintiff's reinstatement request could have been granted *only* on the basis of the collective-bargaining agreement, thus *requiring* a court to interpret that document when fashioning relief. *See Klepsky*, 489 F.3d at 270. Here, by contrast, the Kentucky Civil Rights Act provides an alternative basis for granting reinstatement, which means a court might not need to interpret the bargaining agreement at

all to determine whether to order Appalachian to reinstate Prince. Thus, Prince's request for reinstatement does not show that § 301 completely preempts his breach-of-contract claim.

In summary, the defendant bears the burden to show that a federal court has jurisdiction over the case. Here, Appalachian has failed to demonstrate that § 301 completely preempts Prince's state-law claim for breach of contract. Since Appalachian identifies no other basis for federal jurisdiction, the Court must remand the case back to Kentucky state court.

Accordingly, it is **ORDERED** as follows:

(1) Prince's motion to remand, R. 9, is **GRANTED.**

(2) The case is **REMANDED** to Pike Circuit Court.

(3) All pending motions are **DENIED AS MOOT**, and all conferences and hearings are **CANCELLED.**

(4) This case shall be **STRICKEN** from the Court's active docket.

This the 9th day of December, 2015.

Signed By:
*Amul R. Thapar*  AT
United States District Judge